IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DEBRA L. GRIMM                                                      PLAINTIFF

V.                                         NO. 12-5064

MICHAEL J. ASTRUE,[1]
Commissioner of the Social Security Administration                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Debra L. Grimm, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

Plaintiff originally filed her applications for DIB and SSI on January 4, 2005, alleging disability since July 1, 2003, due to back problems, depression, and high blood pressure. (Tr. 16). The agency denied her applications initially and on reconsideration. (Tr. 16). On April 13, 2007, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 16). On October 29, 2008, United States Magistrate Judge Barry A. Bryant entered a Memorandum Opinion, stating that "despite this high BMI and despite Plaintiff's diagnosis for morbid obesity and her obvious limitations

---

[1] Carolyn Colvin became the Acting Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

AO72A
(Rev. 8/82)

due to her morbid obesity, the ALJ did not fully evaluate her obesity pursuant to SSR 02-1p."
Grimm v. Astrue, Civil No. 5:07-cv-4196 at p. 8 (Oct. 29, 2008). He therefore reversed and remanded the case for further consideration of Plaintiff's obesity.

On remand, a hearing was held before the ALJ on August 7, 2009, at which Plaintiff was represented by counsel and testified. (Tr. 490-528). By written decision dated May 14, 2010, the ALJ found that Plaintiff was not disabled from July 1, 2003, the alleged onset date, to September 12, 2007, the date Plaintiff turned fifty (50) years of age, but became disabled on that date, and has continued to be disabled through the date of the decision. (Tr. 3N-3Q). The ALJ found that during the relevant time period, between July 1, 2003, and September 12, 2007, Plaintiff had an impairment or combination of impairments that were severe - degenerative disc disease, obesity, and depression. (Tr. 3M). However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 3N). The ALJ determined that since July 1, 2003, Plaintiff had the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot do any sustained driving. She can occasionally climb ramps and stairs and stoop, bend, crouch, crawl, kneel, and balance. She cannot climb scaffolds, ladders, or ropes. From a mental standpoint, she can perform routine, repetitive work in which superficial contact is incidental to work with the public and co-workers. Such work has non-complex, simple instructions and is learned and performed by rote, with few variables and little judgment required. Supervision required is concrete, direct, and specific.

(Tr. 3N). With the help of a vocational expert (VE), the ALJ determined that prior to September 12, 2007, Plaintiff was unable to perform any past relevant work, but would be able to perform

other jobs, such as production jobs. (Tr. 3P). The ALJ also found that Plaintiff became disabled

on September 12, 2007, the date the Plaintiff's age category changed, and that there were no jobs

that existed in significant number in the national economy that Plaintiff could perform. (Tr. 3Q).

Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned

pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the

case is now ready for decision. (Docs. 9, 10).

The Court has reviewed the entire transcript. The complete set of facts and arguments

are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.     Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.

3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports

the Commissioner's decision, the Court may not reverse it simply because substantial evidence

exists in the record that would have supported a contrary outcome, or because the Court would

have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In

other words, if after reviewing the record, it is possible to draw two inconsistent positions from

the evidence and one of those positions represents the findings of the ALJ, the decision of the

ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden

of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. <u>Pearsall v. Massanari</u>, 274 F. 3d 1211, 1217 (8th Cir. 2001); <u>see</u> <u>also</u> 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. <u>See</u> 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). <u>See</u> <u>McCoy v. Schneider</u>, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

## III.   Discussion:

Plaintiff raises the following arguments on appeal: 1) The ALJ erred in failing to consider all of Plaintiff's impairments in combination; 2) The ALJ erred in his analysis and credibility findings in regard to Plaintiff's subject complaints of pain; and 3) The ALJ erred in finding that

-4-

Plaintiff retained the RFC to perform less than a full range of light work. (Doc. 9).

**A. Combination of Impairments:**

In his decision, the ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" (Tr. 3L). He also stated that an impairment or combination of impairments was "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. (Tr. 3L). The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or medically equals the criteria of an impairment listed in the relevant listings. (Tr. 3L). The ALJ concluded that Plaintiff did not have an impairment "or combination of impairments" that met or medically equaled the severity of one of the listed impairments. (Tr. 3N). This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments. See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

Pursuant to the Magistrate Judge's instructions to fully consider Plaintiff's obesity pursuant to SSR 02-1p, the ALJ addressed Plaintiff's obesity as follows:

> The record bears out the fact that the claimant's obesity limited her physical activity and was a contributing factor to her medical condition. In 2003, Dr. Runnels advised the claimant to lose weight. In 2005, Dr. Conover diagnosed the claimant with morbid obesity based on a height of 59 inches and weight of 212 pounds. The record further shows the claimant was diagnosed with recurrent depression. She intermittently sought outpatient psychiatric treatment but never required hospitalization. Non-compliance with medication and treatment were noted, as well as that with proper psychiatric treatment, her depression and bipolar

AO72A
(Rev. 8/82)

symptoms could respond favorably.

(Tr. 3O).

SSR 02-1p states that "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record."

The ALJ considered the information contained in the record, and the Court believes there is sufficient evidence to support the fact that the ALJ sufficiently considered the combined effect of Plaintiff's impairments, including her obesity.

### B.    Credibility Findings:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, he also found that Plaintiff's

AO72A
(Rev. 8/82)

statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment prior to September 12, 2007. (Tr. 3O).  The ALJ reported Plaintiff's daily activities were watching television programs, using a computer for e-mail, reading, performing light housework, shopping, and socializing with her adult children. (Tr. 3O).  He also noted Plaintiff's non-compliance with medication and treatment, as well as that with proper psychiatric treatment, her depression and bipolar symptoms could respond favorably. (Tr. 3O).

On December 4, 2003, Dr. Magness conducted a General Physical Examination and concluded that Plaintiff had mild to moderate limitations in her ability to walk, stand, sit, lift and carry. (Tr. 164).  On December 17, 2003, The Community Clinic indicated that Plaintiff had medical noncompliance. (Tr. 260).

On January 22, 2004, non-examining consultant, Dr. Ronald M. Crow, completed a Physical RFC Assessment, and found that Plaintiff was capable of performing medium work. (Tr. 166).  On April 29, 2005, a General Physical Examination was performed by Dr. Conover. (Tr. 224-230). Dr. Conover diagnosed Plaintiff with osteoarthritis, hip bursitis, left knee decreased range of motion secondary to medial meniscus injury, chronic back pain, morbid obesity, HTN, a history of seizures, and depression.  (Tr. 230). He also found that Plaintiff had moderate to severe limitations in her ability to walk and stand; mild limitation in her ability to sit; and that her ability to lift and carry may be hindered secondary to his diagnosis. (Tr.  230).

Another Physical RFC Assessment was completed by non-examining consultant, Dr. Jerry Thomas on May 10, 2005.  (Tr. 304-311). He found Plaintiff was capable of performing light work, and indicated that Plaintiff's activities of daily living were not wholly consistent with

-7-

the  April 2005 physical examination. (Tr. 309).

On August 24, 2005, the assessment at Community Clinic at St. Francis House included "Noncompliance." (Tr. 254). "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." Brown v.Barnhart, 390 F.3d 535, 540 (8th Cir. 2004)(citations omitted); 20 C.F.R. § 416.930(b).  Also on August 24, 2005, Plaintiff was seen at Ozark Guidance Center and it was reported that Plaintiff had suicidal ideation with Prozac, and discontinued it and threw it away. (Tr. 248).

On December 1, 2005, Gene Chambers, Ph.D., of MindWorks, evaluated Plaintiff, and diagnosed her as follows:

| | |
|---|---|
| Axis I: | Major Depression, recurrent |
| | Panic Disorder without Agoraphobia |
| Axis II: | R/O Mathematics Disorder |
| Axis III: | Deferred to physician's report |
| Axis IV: | Occupational problems |
| Axis V: | GAF 55 |

(Tr. 283).

On December 28, 2005, Brad Williams, Ph.D. completed a Psychiatric Review Technique Form and a Mental RFC Assessment. (Tr. 285-299, 300-303). He found Plaintiff to be moderately limited in six categories and not significantly limited in fourteen categories. (Tr. 300-301). He also found that Plaintiff was able to perform work where interpersonal contact was incidental to the work performed, e.g. assembly work; complexity of tasks was learned and performed by rote, with few variables, little judgment required, and where supervision required was simple, direct and concrete. (Tr. 302).

Plaintiff also performed some part-time work during the alleged period of disability

-8-

(2005), working at a fitness center, babysitting children two to five years old, three days a week for four hours a day. (Tr. 148,, 248, 364).  Such work activity is relevant. See Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

Based upon the foregoing, as well as the reasons given in Defendant's well supported brief, the Court finds there is substantial evidence to support the ALJ's credibility findings.

C.    RFC Assessment:

RFC is the most a person can do despite that person's limitations.  20 C.F.R. §404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own description of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ concurred with the opinions of the state agency consultants who provided assessments.  The ALJ considered the treatment records, test results, and examination reports as well. As noted by Defendant, in a March 2003 document of the Arkansas Physical Health & Rehab, it was suggested that Plaintiff's impairment level was 3% based on

the AMA's "Guide to the Evaluation of Permanent Impairment." (Tr. 176). In addition, Dr. Vincent B. Runnels of Northwest Arkansas Neurosurgery Clinic, indicated in a letter that Plaintiff should restrict her lifting to no more than 25 pounds frequently, no repetitive bending or overhead work. (Tr. 154). This, along with the opinions of those of the other physicians discussed above, leads the Court to believe that there was substantial evidence to support the ALJ's RFC assessment.

The Court finds there is substantial evidence to support the ALJ's finding that Plaintiff was nod disabled prior to September 12, 2007.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 30th day of May, 2013.


/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-10-